UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.                                                      Case No. 14-20756

STEPHEN OMAR DURRANT,                  HON. AVERN COHN

    Defendant/Petitioner.
_____/

**<u>MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
(Doc. 138)
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALALBILITY</u>**

I.  Introduction

      This is a criminal case.  Defendant/Petitioner Stephen Omar Durrant (Durrant) plead guilty under a Rule 11 agreement to conspiracy to import controlled substances and making a false statement during the acquisition of a firearm.  The Court sentenced Durrant to 60 months, within the guideline range in the Rule 11 agreement of 57 to 71 months but below the probation department's calculated guidelines range of 70-87 months.  Durrant appealed.  The Court of Appeals for the Sixth Circuit dismissed the appeal, upholding the appellate waiver in the plea agreement and finding no miscarriage of justice.  <u>United States v. Durrant</u>, No. 16-1861 (6th Cir. Apr. 13, 2017).

      Before the Court is Durrant's <u>pro se</u> motion under 28 U.S.C. § 2255.  (Doc. 138). Durrant raises several allegations of ineffective assistance of counsel.  The government has filed a response (Doc. 147) and Durrant a reply (Doc. 148).  For the reasons that follow, the motion will be denied.

II.  Legal Standards

28 U.S.C. § 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).  To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005).  A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999).

As "[§] 2255 is not a substitute for a direct appeal," Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, Frady, 456 U.S. at 166.  Though non-constitutional errors are generally outside the scope of § 2255 relief, see United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,' " Watson, 165 F.3d at 488 (internal quotation marks omitted) (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990)).  Accordingly,

2

alleged sentencing errors, including the proper application of the guidelines, "does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." Jones, 178 F.3d at 796.

Durrant has raised allegations of ineffective assistance of counsel which may be raised for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 508–09 (2003). To establish ineffective assistance of counsel under the Sixth Amendment, Durrant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Durrant must first show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. A court must afford defense attorneys "wide latitude" and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Defense counsel are entitled to a "strong presumption" that they made "all significant decisions in the exercise of reasonable professional judgment." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

If Durrant succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding," Durrant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.

Finally, It is well established that "[a] § 2255 motion may not be used to relitigate

3

an issue that was raised on appeal absent highly exceptional circumstances." <u>Dupont v. United States</u>, 76 F.3d 108, 110-11 (6th Cir. 1996)

### III. Analysis

Durrant says his trial and appellate counsel provided ineffective assistance of counsel. None of his allegations of deficient performance pass the <u>Strickland</u> test as applied on habeas review. Each allegation of ineffective assistance is addressed in turn below.

#### A. Rule 11 Plea/Safety Value Reduction

Durrant says that trial counsel told him to lie to the Court concerning his signature on the Rule 11 agreement, advised him to enter into a "C" plea agreement, without first establishing drug quantity in his case, failed to understand a plea made under a "C" agreement and gave him incorrect advice concerning the safety valve reduction and that appellate counsel should have raised these errors on appeal. None of these allegations merit relief.

By way of background, the Rule 11 agreement anticipated a guidelines range of 57-71 months (Doc. 85). The "C" agreement provided that the sentence of imprisonment could not exceed the top of the anticipated sentencing guideline range of 71 months. At the conclusion of the plea hearing, the Court accepted Durrant's guilty plea and took the Rule 11 agreement under advisement (Doc. 98: Tr. 11/23/15, PgID 431).

Following the plea hearing, the probation department prepared a presentence report. After considering additional enhancement points based upon Durrant's role in the offense, the probation department calculated a guidelines range of 70-87 months.

4

However, because Durrant entered his guilty plea under a "C" agreement, the guidelines became 70-71 months. Ultimately, the Court departed downward from the probation department's guideline and sentenced Durrant to 60 months' imprisonment.

On appeal, Durrant argued that his plea and waiver provision in the Rule 11 agreement were invalid because of certain misstatements by the Court as to his potential guideline range (50-71 months instead of 57-71 months) and the government's right to withdraw. The Sixth Circuit rejected Durrant's arguments and held that Durrant's plea was voluntary. United States v. Durrant, No. 16-1861 (6th Cir. Apr. 13, 2017).

In light of the Sixth Circuit's decision, Durrant cannot relitigate issues surrounding the voluntariness of his plea on collateral review. Thus, any claim that the plea was involuntary due to when Durrant signed the plea agreement and whether Durrant or his counsel understood the impact of a Rule 11 "C" plea cannot form the basis for relief. However, as explained below, trial counsel was not ineffective in the manner in which he handled the plea process.

Durrant says that trial counsel did not establish drug quantity before entering into the Rule 11 agreement. This argument lacks merit. Durrant admitted in the Rule 11 agreement to importing approximately 300 KG marijuana equivalent into the United States (Doc. 85). The drug amounts were derived from analyzing the pills recovered from the co-defendants, who had transported the drugs into the United States at the direction of Durrant. Under the sentencing guidelines, §2D1.1(c)(8), the base offense level for amounts between 100 – 400 KG is 24. This is the level which was used in calculating Durrant's guidelines. Further, at the time of the plea colloquy, it was placed

on the record that if the drug amounts were not accurately reflected in the Rule 11 agreement, and adjustment would be made (Doc. 98: Plea Hearing 11/23/2015, Pg ID 422). Thus, the drug quantity was clearly established and Durrant is not entitled to relief on this ground.

Durrant also says that trial counsel did not advocate for the safety valve reduction in his sentence. This contention lacks merit. First, the court of appeals addressed Durrant's claim concerning safety valve eligibility and determined that there was no error because the Court permitted trial counsel to argue the issue at sentencing. Second, the record shows that trial counsel fully raised the issue of whether Durrant was eligible for the safety value. Although the Rule 11 agreement did not mention a possible safety valve reduction, at the conclusion of the plea colloquy, Durrant's trial counsel mentioned a potential safety valve deduction. The Court indicated that Durrant could argue that later, at the time of sentencing (Doc. 98; Tr. 11/23/15, Pg ID 430).

After the plea hearing, trial counsel filed a motion requesting safety valve consideration. (Doc. 109). In the motion, Durrant acknowledged that a safety valve reduction is not applicable to the firearms charge to which he pleaded guilty, however, he argued that because the gun charges were "not part of the same course of conduct or of a common scheme or plan", he should be eligible for the reduction. The government filed a response arguing that Durrant's claim for safety valve eligibility fails on four grounds: (1) he is not facing a mandatory minimum sentence on the drug related offense, as necessary for relief under 18 U.S.C. §3553(f) and U.S.S.G. §5C1.2; (2) he was an organizer, leader, manager or supervisor of others in the offense; (3) he possessed firearm(s) in connection with the offense, as defined by U.S.S.G. §5C1.2, as

6

relevant conduct conducted as part of the same course of conduct or the common scheme of plan in importing drugs from Canada to be exchanged for guns to be exported into Canada, and, (4) he has not truthfully provided to the government all information concerning the offenses of drug smuggling and firearms purchases by himself and others, at his direction, which were being unlawfully exported into Canada. (Doc. 112).

During the sentencing hearing, Durrant's counsel again argued for the safety valve reduction (Doc. 135: Tr. 6/6/16, Pg ID 646).  Durrant also asked the Court to consider the reduction.  The government argued for a sentence of 71 months, arguing that the firearms were involved with the narcotics and the smuggling scheme by Durrant and that Durrant was a leader in the conspiracy to import the drugs.  Ultimately, the Court imposed a 60 months sentence.  The fact that the Court did not apply the safety value does not mean trial counsel was ineffective.  Appellate counsel was not ineffective for not raising the issue on appeal.

## B.  Sentencing Enhancements

Durrant next argues that his trial counsel was ineffective for failing to challenge an enhancement to his sentence for being a leader, manager or supervisor under U.S.S.G. §3B1.1(c).  This argument lacks merit.

Upon questioning by the Court at his plea hearing, Durrant acknowledged getting drugs from Canada and receiving them into the United States to be sold.  He admitted that he had "contacts in Canada" who were bringing the drugs into the United States (Doc. 98: Tr. 11/23/15, Pg ID 426).  He also admitted that there were "others involved" in the drug importation conspiracy.  As noted in the presentence report, both the female

couriers and the others involved in the firearms offenses indicated that they took direction from Durrant in engaging in the criminal activity. Thus, there was a basis for the enhancement and neither trial nor appellate counsel was ineffective for not challenging it.

Durrant also received an enhancement based upon the number of the firearms involved in the crime. The enhancement was proper under U.S.S.G. §2K2.1(b)(1)(D). Durrant was aware of the enhancement because it was included in the Rule 11 plea agreement worksheets, to which he agreed at the time of sentencing. Durrant also admitted to purchasing a large number of firearms himself (37) during a short period of time (Doc. 85). A number of the firearms connected to Durrant were recovered by Canadian law enforcement, supporting the government's theory that Durrant was smuggling the firearms into Canada. Several of the firearms recovered in Canada had the serial numbers partially obliterated. Durrant also admitted to transferring a number of firearms to others, after a reported break-in at his residence. Each of the firearms transactions were documented and established through evidence during the discovery process. Thus, trial counsel was not ineffective for failing to challenge the application of the enhancement nor was appellate counsel deficient in not pursuing the issue on appeal.

### C. Bifurcation

Durrant next argues that trial counsel was ineffective because he failed to pursue the bifurcation of the charges against Durrant. This argument is belied by the record. Trial counsel filed a motion to sever. See Doc. 67. The government and Durrant's counsel later stipulated that if the case proceeded to trial, two trials would be held; one

involving Durrant and co-defendant Carter involving the drug charges and the second trial involving only Durrant and the firearms charges. (Doc. 109). However, the parties then negotiated a plea agreement which allowed Durrant to plead guilty to one of the drug charges (Count One) and one of the firearms charges (Count Five). The joint plea resolution was favorable to Durrant. He was sentenced below the applicable and anticipated guideline range. Thus, neither trial counsel nor appellate counsel were ineffective regarding bifurcation.

### D. Immigration Status

Durrant next says that trial counsel gave him incorrect advice concerning the consequences of his guilty plea on his immigration status. This contention lacks merit. The Rule 11 agreement specifically includes, in paragraph 4, a "Padilla Waiver" which indicates that Durrant was aware that his guilty plea could affect his immigration status in this country and that he discussed the immigration consequences with his counsel during plea negotiations. The waiver also states that Durrant would not "seek to challenge his guilty plea in any later proceeding via collateral attack on any basis relating to the immigration consequences of his plea." During the plea colloquy, Durrant acknowledged that he was aware that he could be removed from the United States (Doc. 98: Tr. 11/23/15, Pg ID 416, 417). The Court specifically addressed the issue with him, and he indicated he understood (Doc. 98: Tr. 11/23/15, Pg ID 417). The Court even cautioned Durrant that he could not come back after the plea and indicate that he did not understand the immigration issue (Doc. 98: Tr. 11/23/15, Pg ID 418). Thus, it is clear trial counsel communicated the immigration consequences to Durrant and that Durrant was fully aware of them at the time of plea and sentencing. Neither

trial nor appellate counsel was ineffective in this regard.

### E. Speedy Trial

Durrant further says that trial counsel was ineffective because he failed to challenge the second superseding indictment, his plea and his conviction as being in violation of the Speedy Trial Act, 18 U.S.C. § 3161(b). This argument is not well taken. Durrant was originally indicted in a First Superseding Indictment on December 23, 2014 (Doc. 12). On February 25, 2015, Durrant and the other defendants agreed to adjourn the trial and waive speedy trial rights until June 22, 2015. (Doc. 29). A Second Superseding Indictment was filed on March 31, 2015. (Doc. 30). On May 7, 2015, Durrant and the other defendants agreed to an adjournment of the trial date and waiver of speedy trial rights until September 15, 2015. (Doc. 48). On August 31, 2015, Durrant filed pre-trial motions, which extended the speedy trial clock. (Doc. 67). A trial was scheduled for November 16, 2015. (Doc. 71). On October 20, 2015, Durrant and the other defendants agreed to a continuance until December 1, 2015. (Doc. 77). On November 23, 2015, Durrant entered his guilty plea to Counts One and Five of the Second Superseding Indictment. See Doc. 82.

Under 18 U.S.C. §3161, a court may grant continuances on his/her own, or at the request of the parties, if the ends of justice served by the continuance outweigh the best interest of the public and the defendants in a speedy trial. Continuances may be granted when a party files a pre-trial motion. See 18 U.S.C. §3161(h)(1)(D).

As set forth above, there was no violation of Durrant's speedy trial rights. The Court entered the stipulations of the parties finding that the ends of justice were served by allowing the continuances in the proceedings. The proceedings moved within the

time frame of the stipulations. Trial counsel was not ineffective in agreeing to move the trial clock nor was appellate counsel ineffective for not raising the issue on appeal.

### F.  Overall

There is no evidence that trial or appellate counsel rendered legal assistance which "fell short of the norms of the legal profession." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) or was inadequate. To the contrary, trial and appellate counsel rendered effective assistance. Trial counsel secured a Rule 11 agreement which was favorable to Durrant. The Court sentenced Durrant to a term of imprisonment below the probation department's guidelines range and below that argued for by the government. Appellate counsel challenged the waiver on appeal, but was ultimately not successful. Based on the record, it cannot be said that counsel was deficient or that Durrant was prejudiced the representation he received.

Finally, because Durrant's claims of error amount to no more than his attorneys' refusal to take positions contrary to well established precedent, or to argue against certain well-documented facts, an evidentiary hearing is not necessary to determine that Durrant received effective assistance of counsel. Green v. United States, 65 F.3d 546 (6th Cir. 1995)(where files and records of the court clearly show that petitioner is entitled to no relief, no hearing of any kind is required); Turner v. United States, 183 F.3d 474 (6th Cir. 1999)(no hearing required unless there is a factual dispute about the constitutional infirmity of counsel's performance).

### IV.  Conclusion

For the reasons stated above, Durrant has not demonstrated that he is entitled to relief under § 2255. Accordingly, the motion is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Hilton's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1]  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

SO ORDERED.

                                      <u>S/Avern Cohn</u>
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE

Dated: 5/10/2018
      Detroit, Michigan

---

[1] The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.